IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Criminal No. 1:19cr0009 |
| ) | |
| v. ) | |
| ) | |
| IONIAN SHIPPING & TRADING ) | |
| CORP., ) | |
| LILY SHIPPING LTD., and ) | |
| IONIAN MANAGEMENT INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

COUNT ONE
*(Act to Prevent Pollution from Ships - 33 U.S.C. § 1908(a))*

FACTUAL BACKGROUND

At all times relevant herein,

*The M/T Ocean Princess*

1.  The *M/T Ocean Princess* was an ocean-going vessel engaged in international ocean-going commerce transporting petroleum products in the Caribbean, including from St. Croix, United States Virgin Islands. The vessel was 5,364 gross tons and was registered or "flagged" by the Republic of Panama. The *M/T Ocean Princess* was operated by Ionian Shipping & Trading Corp. ("IONIAN ST") and owned by Lily Shipping Ltd. ("LILY"). Ionian Management Inc. ("IONIAN M") managed the commercial operations of the vessel to include bunkering of the vessel, cargo loading and unloading, and providing delivery instructions for the cargo.

2. The *M/T Ocean Princess* had a crew consisting of, among others, a Master, Chief Officer, Chief Engineer, Second Officer, Second Engineer, Third Officer, Third Engineer, and several lower-level crewmembers known as Oilers, Wipers, Able-Bodied Seamen, and a Fitter. These crewmembers acted on behalf of the owner, operator, and commercial manager, based on their respective duties and responsibilities, to carry out activities on the vessel to ensure the vessel was able to operate and carry cargo internationally. All of the actions taken by these crewmembers as described in this Information were within the course and scope of their employment and/or agency on behalf of the owner, operator, or commercial manager, as set forth more specifically below, and for their benefit, at least in part.

3. The *M/T Ocean Princess* required fuel for combustion in the main engine, generators, and auxiliary equipment. From on or about January 1, 2016, until on or about September 5, 2018, the *M/T Ocean Princess* operated at various times within the United States Caribbean Sea Emission Control Area ("U.S. Caribbean ECA").

<u>Defendants</u>

4. IONIAN ST was a company that was registered in Liberia on or about March 1994 with an operating address of 82 Vasileos Pavlou Street, Voula, Greece 166 73. IONIAN ST operated four oil and chemical product tankers including the *M/T Ocean Princess*. IONIAN ST operated the *M/T Ocean Princess* since on or about February 17, 2010.

5. LILY was a company that was registered in the Marshall Islands on or about June 8, 2009, with the same operating address as IONIAN ST. LILY has owned the *M/T Ocean Princess* since on or about November 1, 2009.

6. IONIAN M was a company that was registered in New York on or about December 27, 2000, with an operating address at 1790 Broadway, Suite 1700, New York, NY 10019.

IONIAN M, among other things, served as the commercial manager of the *M/T Ocean Princess*. Through Employee A, IONIAN M authorized the Master of the *M/T Ocean Princess* to load and unload cargo in various ports in the Caribbean and to transfer cargo to the bunker tanks to be used as fuel. The Master, Chief Officer, and Chief Engineer would carry out the authorization provided by IONIAN M for cargo operations and bunkering.

## LEGAL BACKGROUND

7. The Act to Prevent Pollution from Ship ("APPS"), 33 U.S.C. §§ 1901-1915, implements the International Convention for the Prevention of Pollution from Ships, also known as MARPOL, an international treaty to which both the United States and the Republic of Panama are parties. MARPOL includes six Annexes addressing various forms of pollution. Annex VI regulates air emissions and was ratified by the U.S. Senate in 2006. *See generally*, MARPOL Annex VI, Consolidated Edition (2017). Congress subsequently amended APPS to implement Annex VI as enforceable U.S. law in 2008. Maritime Pollution Act of 2008, Pub. L. 110-280, 122 Stat. 2611 (2008).

8. APPS makes it a crime for any person to knowingly violate APPS, MARPOL, or regulations issued by the Secretary of the Department of Homeland Security ("DHS") or the U.S. Environmental Protection ("EPA") Administrator to carry out MARPOL. 33 U.S.C. § 1901(a)(1), (11) (defining "Administrator" and "Secretary"); § 1903(c) (giving DHS and EPA rule making authority); § 1908(a) (proscribing criminal conduct). The EPA has promulgated regulations to carry out portions of Annex VI at 40 C.F.R. §§ 1043.1 – 1043.100.

9. APPS applies to a foreign-flagged vessel if the vessel is within U.S. navigable waters, the U.S. Exclusive Economic Zone, or an Emission Control Area ("ECA") designated under 33 U.S.C. § 1903. 33 U.S.C. § 1902(a)(2)(C); 40 C.F.R. § 1043.10 & .60.

10. The International Maritime Organization ("IMO") is a part of the United Nations and is the global standard-setting authority for maritime safety, security, and environmental matters concerning ships, including MARPOL. MARPOL Annex VI, adopted in 1997 and entered into force in 2005, established maximum allowable sulfur concentrations in marine fuels, and maximum oxides of nitrogen (NOx) emission rates in engine exhaust. MARPOL Annex VI was amended in 2008, and among other things, set more stringent fuel sulfur limits and more stringent NOx emission standards, including for vessels operating in designated ECAs.

11. On July 15, 2011, following a proposal by the U.S. government, IMO designated the U.S. Caribbean ECA for both fuel-sulfur limits and NOx emission standards. This ECA includes waters surrounding Puerto Rico and the U.S. Virgin Islands. The IMO designation was made by the IMO's Marine Environment Protection Committee adopting Resolution MEPC.202(62) that amended MARPOL Regulations 13, 14, and Appendix VII of Annex VI to reflect the new designation. *See* MARPOL Annex VI, reg. 13.6.2, 14.3.3., app. VII.2.3. In accordance with article 16(2)(f)(iii) of MARPOL, the amendments entered into force on January 1, 2013, and vessels operating in the U.S. Caribbean ECA were allowed a one-year exemption, making the requirements enforceable under U.S. law as of January 1, 2014. 40 CFR § 1043.5 (Designation of the U.S. Caribbean ECA and exemption of certain ships operating in the U.S. Caribbean ECA). Coordinates for points 28, 29, and 30 of the U.S. Caribbean ECA were transcribed incorrectly and were corrected in the Report of the Marine Environment Protection Committee on its Sixty-Second Session, Document MEPC 62/26/Corr.4.

12. The U.S. Caribbean ECA imposes limitations on the sulfur content of fuel oil used on board ships for internal combustion. 40 C.F.R. § 1043.60, *see also*, MARPOL Annex VI, reg. 14.4 (same standard). Since 2015, in the U.S. Caribbean ECA, the sulfur limit has been 0.10% by

weight. *Id.* In the alternative, a vessel may use an approved equivalent control mechanism (e.g., an exhaust scrubber) to achieve sulfur emission levels equivalent to those achieved by the sulfur fuel limitations. 40 C.F.R. § 1043.55. The *M/T Ocean Princess* did not have an approved equivalent control mechanism installed.

13. On vessels such as the *M/T Ocean Princess*, various types of petroleum cargo, such as high-sulfur diesel, low-sulfur diesel, ultra-low sulfur diesel, and gasoline, are loaded into the cargo tanks and transported to facilities to offload. Bunker is separate and distinct from cargo. Bunker is the fuel that the vessel uses to power the main engine, generators, and auxiliary equipment. Bunker is loaded into bunker tanks which are separate and distinct from cargo tanks. The process of loading bunker onto a vessel is known as "bunkering."

14. Ships subject to Annex VI must meet certain recordkeeping requirements such as making and maintaining Technical Files, an Engine Book of Parameters, fuel-oil switchover plans, and bunker delivery notes. *See* 40 C.F.R. § 1043.70; *see also*, Annex VI, reg. 13, 14, 18. Ships must retain for three years bunker delivery notes containing details of fuel delivered for combustion purposes, including the receiving port, delivery date, supplier information, quantity, density, and sulfur content. Annex VI, reg. 18.5-.6. The bunker delivery note must contain a signed statement by an authorized representative of the fuel supplier certifying that the fuel supplied conforms to Regulations 14 and 18 of Annex VI consistent with its designation, intended use, and the date on which it is to be used. 40 C.F.R. § 1043.80(a), (b); *see also*, Annex VI, reg. 18.8.1, 18.8.2, 18.9.

15. Consistent with the requirements contained in MARPOL, APPS regulations require that vessels such as the *M/T Ocean Princess* also maintain a record known as an Oil Record Book Part I in which the bunkering of fuel must be recorded. 33 C.F.R. § 151.25(d)(5). APPS also

requires an oil tanker, such as the *M/T Ocean Princess*, to maintain a record known as an Oil Record Book Part II, in which all transfers of cargo must be recorded. 33 C.F.R. § 151.25(e)(2). The Oil Record Book Parts I and II, must be maintained aboard the vessel and be readily available for inspection at all reasonable times. MARPOL Annex I, Regs. 17.6 & 36.7. According to 33 C.F.R. § 151.25(j), "[t]he master or other person having charge of a ship required to keep an Oil Record Book shall be responsible for the maintenance of such record." Other members of the ship's crew, including Chief Engineers and Chief Officers, may aid and abet and cause the vessel Master's failure to maintain an accurate Oil Record Book under 18 U.S.C. § 2.

16. The U.S. Coast Guard, an agency of the U.S. Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under Title 14, United States Code, Section 522(a), to board vessels and conduct inspections and investigations of potential violations and to determine compliance with MARPOL, APPS, and related regulations. In conducting inspections, U.S. Coast Guard personnel rely on the statements of the vessel's crew and documents, including information contained in Oil Record Books. The U.S. Coast Guard is specifically authorized to examine a vessel and its Oil Record Books for compliance with MARPOL and APPS. 33 U.S.C. § 1907(d).

17. On multiple occasions between on or about March 2, 2016, and on or about September 5, 2018, in the Port of St. Croix, U.S. Virgin Islands, within the District of the Virgin Islands, and elsewhere, defendants IONIAN ST, LILY, and IONIAN M acting through their respective employees and agents, who acted within the scope of their employment and agency on behalf of IONIAN ST, LILY, and IONIAN M, and for the benefit of IONIAN ST, LILY, and IONIAN M, at least in part, did knowingly own, operate, and cause to be operated, the *M/T Ocean*

*Princess* using fuel that exceeded 0.10% sulfur by weight while the vessel was within the U.S. Caribbean ECA.

All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2; and Title 40, Code of Federal Regulations, Section 1043.10 and .60.

## COUNT TWO
*(Act to Prevent Pollution from Ships - 33 U.S.C. § 1908(a))*

18. Paragraphs 1 through 16 of this Information are hereby re-alleged and incorporated by reference herein.

19. On or about July 11, 2018, in the Port of St. Croix, U.S. Virgin Islands, within the District of the Virgin Islands, and elsewhere, defendants IONIAN ST and LILY, acting through their respective employees and agents, who acted within the scope of their employment and agency on behalf of IONIAN ST and LILY, and for the benefit of IONIAN ST and LILY, at least in part, did knowingly fail to maintain, and caused the failure to maintain, an Oil Record Book for the *M/T Ocean Princess* in which the recording of all bunkering of fuel is required. Specifically, defendants IONIAN ST and LILY, failed to record in the Oil Record Book that bunkering had taken place on the vessel, on numerous occasions, by transferring cargo into the bunker tanks and by falsely recording that bunkers had been received from a shore-side facility.

All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2; and Title 33, Code of Federal Regulations, Section 151.25(a), (d) and (j).

## COUNT THREE
*(Act to Prevent Pollution from Ships - 33 U.S.C. § 1908(a))*

20. Paragraphs 1 through 16 of this Information are hereby re-alleged and incorporated by reference herein.

21. On or about July 11, 2018, in the Port of St. Croix, U.S. Virgin Islands, and within the District of the Virgin Islands, and elsewhere, defendants IONIAN ST and LILY, acting through their respective employees and agents, who acted within the scope of their employment and agency on behalf of IONIAN ST and LILY, and for the benefit of IONIAN ST and LILY, at least in part, did knowingly fail to accurately maintain bunker delivery notes. Specifically, defendants IONIAN ST and LILY maintained, and caused to be maintained, bunker delivery notes that falsely claimed that bunker was taken onboard the *M/T Ocean Princess* from a shore-side facility in St. Martin, French West Indies, when in fact the bunker had been transferred from the vessel's cargo tanks.

All in violation of Title 18, United States Code Section 2; Title 33, United States Code Section 1908(a); MARPOL Protocol Annex VI, Regulation 18; Title 40, Code of Federal Regulations, Section 1043.10 and .70(a).

## COUNT FOUR
*(Obstruction of an Agency Proceeding - 18 U.S.C. § 1505)*

22. Paragraphs 1 through 16 of this Information are hereby re-alleged and incorporated by reference herein.

23. On or about July 11, 2018, in the Port of St. Croix, U.S. Virgin Islands, within the District of the Virgin Islands, and elsewhere, defendants IONIAN ST and LILY, acting through their respective employee and agent, who acted within the scope of his employment and agency on behalf of IONIAN ST and LILY, and for the benefit of IONIAN ST and LILY, at least in part, did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the U. S. Coast Guard and the Department of Homeland Security, that is, during a vessel examination of the *M/T Ocean Princess* to determine the vessel's compliance with MARPOL, APPS, and United States law, defendants IONIAN ST and LILY falsely stated to U. S. Coast Guard personnel that: (1) the vessel

routinely took on bunkers of Ultra Low Sulfur Diesel in Galisbay, St. Martin, French West Indies; and (2) instructed lower-level crewmembers on the vessel to lie to U. S. Coast Guard inspectors about where the vessel took on bunkers.

All in violation of Title 18, United States Code, Section 1505.

GRETCHEN C.F. SHAPPERT
UNITED STATES ATTORNEY

Dated: 10 APR 2019          By: _____
                                 G. A. Massucco-LaTaif
                                 Criminal Chief

Dated: 10 APR 2019              _____ for
                                 Kim Chisholm
                                 Assistant United States Attorney

Dated: 4/9/19                   _____
                                 Kenneth E. Nelson
                                 Senior Trial Attorney
                                 Environmental Crimes Section, DOJ